Poland vs. Dreyfous, Widow.

## No. 11,922.

FREDERICK POLAND VS. MRS. ANNA DREYFOUS, WIDOW OF BERNARD FELLMAN. ·

$\frac{48}{104}$ $\frac{83}{311}$

Courts take notice of the streets and of the names and locations of the suburbs from time to time brought within the city limits. 1 Greenleaf on Evidence, Sec. 6.

An assessment of street lots by the boundaries derived from the act by which the property was conveyed, though giving the changed names by which two of the boundaries were known at the date of the assessment, and stating the numbers of the lots as they are given in the act, held sufficient to support a tax sale, although the depths of the lots are not correctly stated. Cooley on Taxation, Chapter 12; 99 U. S. 443; 20 An. 324.

APPEAL from the Civil District Court for the Parish of Orleans. King, J.

---

W. S. Parkerson and John Watt for Plaintiff, Appellee.

---

Dart & Kernan for Defendant, Appellant.

---

Argued and submitted December 5, 1895.
Opinion handed down January 6, 1896.

---

The opinion of the court was delivered by

MILLER, J.   The plaintiff sues for property inherited from his mother.   The defendant claims under an adjudication to her husband under the act of the Legislature No. 82 of 1884.   The appeal is by the defendant from the judgment in plaintiff's favor.

· The character of the action has been much discussed, the plaintiff urging that he sues for slander of title, and that defendant having answered, setting up title, assumed the burden of plaintiff in the petitory action.   The defendant insists the action is petitory on the part of plaintiff, who must make out his case, that is, can recover only on the strength of his title.   The petition avers ownership; that defendant claims under a tax title alleged to be void, because the property was not on the assessment rolls; that the rolls contained no description of the property, and that defendant claiming to have acquired it under the Act No. 82 of 1884, never paid the taxes accrued since 1880, requisite to maintain title under that act.   The prayer is

for judgment decreeing the erasure of the inscription of the tax title and for recognition of the plaintiff's ownership. The answer maintains the validity of the tax title, alleges the payment of the taxes accrued since 1880, pleads the prescription of three and five years, and prays for judgment dismissing plaintiff's demand.

The suit for slander of title is brought by a party in possession and seeks to maintain it. The title and possession are averred and the slander is alleged. The relief sought is that the defendant be ordered to bring suit to establish his pretensions; pay damages for the slander, and that the plaintiff be quieted in his possession. Possession is the issue made by plaintiff, but if the defendant, instead of admitting the slander and his readiness to bring the suit, or denying the slander, chooses to assert his title, he changes the action into the petitory suit and takes on himself the burden of plaintiff in such suit. Thus defined in our jurisprudence, we should have some difficulty in holding the suit in this case, one for slander of title. Livingston vs. Herman, 9 An. 712; Packwood vs. Dorsey, 4 An. 90; Dalton vs. Wickliffe, 35 An. 356; Remick vs. Lang, 47 An. 914. The character of the action here is not, however, of importance under the view we take of defendant's title.

The property in controversy is ten lots of ground acquired by plaintiff's mother, Susan Poland, in 1837, described as bearing the numbers 100 to 110, each measuring thirty feet on State street by depths ranging from one hundred and twenty-six to one hundred and thirty-one feet, omitting inches, and the deed of 1837 refers to the property as part of that bounded by the Burthe property on one side, and on the other by that of Hurst. The deed and plan in evidence show that the lots are on the upper side of State street, with Burthe's property in the rear. The adjudication, the basis of defendant's title, was to pay the taxes of 1875, 1876, 1877 and 1878. The plaintiff produced in evidence extracts from the delinquent rolls for those years, and on the assumption that the extracts show the assessments, strenuously contests their sufficiency. But delinquent rolls are designed to show unpaid taxes, and are not the assessment rolls. Revised Statutes, Secs. 3305, 3307; Act No. 42 of 1871, Secs. 66, 67, 68; Act No. 17 of 1875. On the other hand the defendant filed a document, certified by the city comptroller, in whose office one of the copies of the assessment rolls is required to be deposited, purporting to show

the assessments in question.  This paper, accompanied by the proof that the original assessment rolls were not to be found in the auditor's office, was offered and received without objection to show the assessments.  We think it must have effect.  It appears that for 1875 and 1878 the assessments are headed on the rolls:  Upper side State street, St. Charles and Burtheville; under the headings numbers of lots and measurements there are the numbers 101-110, each 30 feet by 170, and in the appropriate columns are carried out the assessed valuations on which the taxes are based.  These assessments are in the full name of plaintiff's mother, living at the time, and for years after.  The plan under which she bought shows the lots part of many others extending on the upp-r side of State street, toward the swamp, with no intersecting streets.  The court takes notice of the streets of the city, and of the location and names of the suburbs, brought from time to time within the city limits, and in the appreciation of these assessments we have been aided by the plan.  The assessments give the frontage on the upper side State street as one boundary, Burtheville as the other, which in the lapse of years became the designation of Burthe's property, and St. Charles street, formerly Nayades.  The plaintiff's deed gives the frontage on the upper side State street and Burthe's property, and the assessments state the numbers of the lots precisely as given in the deed.  There is a discrepancy in the depths of the lots 126 to 131 appearing in the deed and 170 feet in the assessments.  But with this variance in the depths, the boundaries, the numbers of the lots and the name of the owner are given in the assessments.  It is not material to consider the assessments for 1876 and 1877, as a valid assessment for any one of the years will support a tax sale, if good in other respects.

The law requires the assessments should describe the property with reasonable certainty, so as to furnish the basis for subsequent conveyances, and sufficient to apprise the owner it is his property that is assessed and proposed to be sold if the taxes are not paid.  Cooley on Taxation, Chapter 12; Keely vs. Sanders, 99 U. S. 443.  Our courts have enforced this rule and refused sanction to assessments giving no boundaries, or confusing or inconsistent lines, or in other particulars so deficient as not to locate the property or convey notice to the owner.  Wills & Rawlins vs. Caspar Auch, 8 An. 19; Wilson vs. Marshall, 10 An. 327; Dodeman vs. Barrow, 11 An. 87; Augusti

vs. Heirs of Lawless *et al.*, 45 An. 1370. Land and Improvement Co. vs. Succession of Fasnacht, 47 An. 1297. It would be, we think, too great a strain on reason and on law to hold a discrepancy in the depths of these lots, as given in the deed and in the assessment, sufficient to avoid the tax sale, if, in other respects, the assessments are adequate. In the deed by which the plaintiff acquired the property, the numbers of the lots, their frontage on the upper side of State street, Burthe's property in the rear, Nayades street on one side, and none on the other for the reason there were no intersecting streets beyond, were deemed the essentials of the description with the designation of the locality to be found in the first part of the deed. In all these particulars there is substantial conformity in the assessments: St. Charles street takes the place of Nayades, Burthe's property is substituted by Burtheville, there is the same frontage of thirty feet on the upper side of State street, and the numbers by which plaintiff's mother bought, all appear in the assessments. In our view, the owner, knowing he owned the ten lots numbered 101–110, each fronting thirty feet on the upper side of State street, with St. Charles on one side toward the river, and Burtheville, in the rear of State street, could not have been misled as to the property intended by an assessment practically conforming, in all material respects, with her own deed and against her as the owner. No remissness in looking after payment of one's taxes will supply a proper assessment for the basis of title, but the fact that plaintiffs sue as heirs of an owner who for years paid no taxes on the property, is suggestive that her indifference in this respect, and not any want of notice by the assessments, was the reason why the tax sale was permitted to occur. We think the assessments for 1875 and 1878 afford the basis to maintain the tax sale.

This view renders unnecessary any discussion of the pleas of prescription of the defendant. We understand it is conceded defendant paid the taxes necessary to complete the tax title. In plaintiff's brief there is the statement no notice of the tax sale was received by plaintiff. But the sale for these taxes accrued prior to the Constitution of 1879, was made under the authority of the ordinance in the Constitution for the relief of delinquent taxpayers, and the Act. No. 82 of 1884. The form of notice under the ordinance was left to the Legislature, and the act did not require personal notice. The deed is *prima facie* proof of legal requisites, and the absence of personal

notice would not impeach it.  See ordinance in the Constitution; Act No. 82 of 1884, Sec. 5; in the matter of Orloff Lake, 40 An. 142; Henderson vs. Ellerman, 47 An. 311; Dibble vs. Leppert, 47 An. 798.  'The controlling question is the sufficiency of the assessments, and on that issue we think the tax sale passed the title.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed, and that he pay costs.